IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| JULLIAN D. BOOKER, | : | HON. JEROME B. SIMANDLE |
| Plaintiff, | : | Civil No. 10-4886 (JBS/JS) |
| v. | : |  |
| TOWNSHIP OF WILLINGBORO, et al., | : | **OPINION** |
| Defendants. | : |  |

APPEARANCES:

Robert H. Bembry, III, Esq.
100 S. Broad Street, Suite 1530
Philadelphia, PA 19110
    Attorney for Plaintiff Jullian D. Booker

J. Brooks Didonato, Esq.
John Charles Gillespie, Esq.
PARKER MCCAY, PA
Three Greentree Centre
Route 73 and Greentree Road, Suite 401
Marlton, NJ 08053
    Attorneys for Defendants Township of Willingboro and Sean
    Malone

**SIMANDLE**, Chief Judge:

I. **INTRODUCTION**

    This matter is before the Court on the motion for summary

judgment by Defendants Sean Malone and Township of Willingboro.

[Docket Item 22.]  The Plaintiff has filed opposition.  [Docket

Item 26.]  The instant action arises out of the alleged use of

excessive force by Defendant Police Officer Sean Malone ("Malone"

or "Defendant") when arresting Plaintiff Jullian D. Booker

("Plaintiff") after a high speed chase.  The Plaintiff brought

the instant action alleging a violation of his Fourth Amendment rights pursuant to 42 U.S.C. § 1983.  The Plaintiff also brings two common law tort claims for assault and battery and malicious prosecution.

For the reasons discussed herein, the court will grant in part and deny in part Defendants' motion for summary judgment. The Court will grant summary judgment as to Plaintiff's common law tort claims as the court finds the Plaintiff has failed to satisfy the notice requirements of the New Jersey Tort Claims Act, N.J.S.A. 59:8-1, et seq.  The court will also dismiss all claims against Defendant Township of Willingboro as the Plaintiff has not set forth sufficient evidence to support his § 1983 claim against the Township and consents to the dismissal of this claim. However, the court will not dismiss the Plaintiff's excessive force claim against Defendant Malone as the court finds there is a genuine issue of material fact which precludes summary judgment.

## II.  BACKGROUND

### A. Statement of the Facts and Procedural History[1]

_____

[1] The following facts are taken from the Defendants' Statement of Material Facts submitted pursuant to L. Civ. R. 56.1(a) and are supported by the record before the court.  The Plaintiff did not include in his opposition papers a responsive statement of material facts, as required by L. Civ. R. 56.1(a). Rather, the Plaintiff included a partial response to Defendants' Statement of Undisputed Facts highlighting only four facts with which the Plaintiff disagrees and does not provide consistent citations to the record as required by L. Civ. R. 56.1. [Docket

The instant action arises out of an incident on the afternoon of April 2, 2009.  The Plaintiff was a passenger in a Nissan Altima ("Altima") wherein the driver was later identified to be Silvester Inata Williams.  At the time of the incident, Plaintiff was sixteen years old.

On April 2, 2009, Plaintiff was at a friend's house as he had been suspended from school.  (Def.'s Ex. E, Deposition of Jullian Booker "Booker Dep.," at 19:7; 22:16-17.)  The Plaintiff and Silvester were friends and the Plaintiff called Silvester to

---

Item 26-5.]

Plaintiff's response is a slip-shod document.  First, Plaintiff's counsel inserts two introductory paragraphs taken from a wrongful death case involving Megan Gunter, Administratrix of the Estate of Albert Gunter, against the Township of Lumberton, et al., having nothing to do with this case.  (Id. at pp. 1-2.)  Second, Plaintiff addresses only four of Defendants' 87 paragraphs in Defendants' Statement of Material Facts; the remaining 83 are thus deemed undisputed pursuant to L. Civ. R. 56.1(a).  Third, Plaintiff's counsel falsely complains that "Plaintiff does not have a response to Defendants' Statement of Disputed Facts [sic], because Defendants' [sic] fail to serve a Statement with their motion."  [Docket Item 26-5 at 3.]  This nonsensical statement is contradicted by Plaintiff's same cut-and-paste document which at least took issue with four of Defendants' 87 paragraphs in Defendants' Statement of Material Facts.  [Docket Item 22-1.]  Even after these serious shortcomings were pointed out, Plaintiff's counsel has offered neither an explanation or an apology.  Plaintiff's counsel's efforts evidence a lack of professionalism and respect for the processes governing his case.  If counsel is not prepared to measure up to these requirements as the case is prepared for trial, counsel should consider substituting new counsel who will do so.

The Court will deem all of Defendants' facts which the Plaintiff has not responded to as undisputed.  The facts which are contested by the Plaintiff and properly supported by the record will be noted herein and examined by the court.

pick him up and give him a ride home.  (Booker Dep. at 18:8-19:18.)  Silvester then picked up the Plaintiff in the Altima and the Plaintiff rode in the passenger seat.  (Booker Dep. at 21:7-11.)

Officer Lippincott observed the Altima traveling in a residential neighborhood at a high rate of speed.  Officer Lippincott then turned his patrol vehicle around, activated his overhead lights and attempted to conduct a motor vehicle stop of the vehicle for speeding. (Defs.' Ex. A, April 2, 2009 Police Report by Officer Lippincott ("Lippincott Report") at 1).

Instead of pulling over, the Altima made a left turn away from the patrol car and accelerated to approximately 65 miles an hour.  At this time, the Altima was traveling in a heavily residential neighborhood with a speed limit of 25 miles per hour. The driver of the Altima then lost control of the vehicle, went over a curb and came to a stop on a resident's lawn, causing damage to the property.  Officer Lippincott exited his vehicle and ordered the driver out of his vehicle using loud verbal commands but the driver refused to exit.  (Lippincott Report at 1.)

After approximately five seconds, the driver put his vehicle back into drive and began to drive away from the patrol car.  The driver turned left further into the residential neighborhood and again accelerated to approximately 65 miles per hour.  The driver

4

of the Altima then attempted to turn right and lost control of
the vehicle again.  The driver regained control, put the vehicle
in park and exited the vehicle.  The driver then fled into the
backyard of a residence and was pursued by Officer Lippincott.
(Lippincott Report at 1.)

During the course of this pursuit, Officer Lippincott
advised patrols that the suspect vehicle was fleeing from him in
this residential neighborhood.  (Defs.' Ex. C, Secondary Report
by Officer Sean Malone "Malone Report," at 1.)  Officer Malone
and other Willingboro police officers responded to this call for
assistance.  Malone was near the residential area and drove his
car to the intersection Officer Lippincott had indicated via
radio.  Upon entering the intersection, Malone immediately saw
the Altima headed directly toward him at between 60 to 65 miles
per hour and he had to swerve his vehicle to the right onto the
grass and shoulder area in order to avoid a head on collision
with the Altima.  (Malone Report at 1.)

Malone then made a quick U-Turn and observed the Altima
stopped in front of a residence and saw the driver exit the
vehicle.  Malone observed Officer Lippincott pursuing the fleeing
driver.  Malone then pulled his patrol car over, exited his
vehicle and observed the Plaintiff, who was the passenger in the
vehicle, beginning to open the passenger door to the vehicle.
The passenger door opened partially and it appeared to Malone

that the passenger had gotten caught in the seatbelt.  (Malone Report at 1.)

Malone approached the vehicle and drew his service weapon. In accordance with his training, Malone rushed forward with his canine partner, Milo, opened the passenger door fully, grabbed the occupant out of the vehicle, re-holstered his weapon and spun the Plaintiff to the ground in order to affect his arrest. (Malone Report at 1; Defs.' Ex. D, Deposition of Sean Malone "Malone Dep.," at 25:18-20.)  Upon taking the Plaintiff to the ground, Malone placed his right knee on the Plaintiff's back while controlling Milo with his left hand.  (Malone Report at 1.)

Malone then commanded the Plaintiff to place his hands behind his back and told the Plaintiff not to move.  (Malone Report at 1.)  Malone, in both his report and his deposition testimony, maintains that the Plaintiff refused to comply with his command and resisted arrest by attempting to push himself off the ground and dislodge Malone from his back.  (Malone Report at 1, Malone Dep. at 36:25-37:7.)  Malone then delivered two strikes to the Plaintiff.  Malone alleges these strikes were PPCT strikes to the back of the Plaintiff's shoulders.  (Malone Dep. at 37:16-17.)  Malone maintains that two strikes were given to keep the Plaintiff from moving since Malone was alone on the scene and had only his canine partner, Milo, for back up. (Malone Dep. at 37:23-38:2.)

After the two strikes were given, Malone stayed on top of the Plaintiff and waited for an additional officer.  (Malone Dep. at 38:7-10.)  Shortly thereafter, Sgt. Bowman arrived, took Office Malone's handcuffs from the back of his utility belt and handcuffed the Plaintiff.  (Malone Report at 1.)

The Plaintiff disputes Defendant Malone's version of events. The Plaintiff testified during his deposition that he had cracked open the passenger door and was waiting for the officer's commands before exiting the vehicle. (Booker Dep. at 30:22-31:2.) The Plaintiff alleges that Officer Malone opened the passenger door with a gun in one hand and his dog on his side and grabbed him by the collar of his T-shirt.  (Booker Dep. at 31:4-10.) Plaintiff maintains that during this interaction, Officer Malone told him to "Get the fuck out of the car" and to "Get the fuck on the ground." (Booker Dep. at 30:25-31:10.) Then Malone pulled the Plaintiff to the ground so he was lying face down on the concrete.  (Booker Dep. at 31:12-14.)

Plaintiff next testified that after he was pulled to the ground, Malone put his gun away and grabbed his dog, Milo and said, "If you fucking move I'll have my fucking dog bite your fucking face off."  While he was saying this, Plaintiff maintains that Malone pulled his dog close to his face and he could feel the slobber from the dog's tongue dripping on his face.  (Booker Dep. at 31:18-25.)  It is undisputed by the parties that Milo,

7

Malone's canine partner, did not bite or physically harm the Plaintiff during this encounter.

After the Plaintiff was face down on the concrete, Plaintiff testified that Malone struck Plaintiff twice in the left backside of his head. (Booker Dep. at 32:2-4.) Plaintiff stated that the blows to the back of his head bruised the left side of his face and caused his teeth to sink into the inside of his mouth leaving a big gash. (Booker Dep. at 32:9-12.) The Plaintiff denies that at any time during this encounter he was resisting arrest or attempting to escape. (Booker Dep. at 36:11-13.) The Plaintiff maintains that he was complying with all of Officer Malone's orders. (Booker Dep. at 36:10.)

The Plaintiff did not suffer any permanent physical injuries as a result of this incident. The Plaintiff testified that he gets headaches a lot, but he did not know if the headaches are a result of this incident with Officer Malone. (Booker Dep. at 76:23-77:3.)

The entire interaction between Officer Malone and the Plaintiff was captured on video from Officer Lippincott's police car. (Defs.' Ex. G.) The entirety of the interaction between Malone and the Plaintiff lasted 74 seconds. Malone was able to gain control of the Plaintiff in 24 seconds. However, while Officer Malone is visible at all times, once the Plaintiff is on the ground, most of Plaintiff's body is blocked from view by

8

Officer Lippincott's car, with the exception of his legs.
Consequently, the video does not resolve the factual disputes at
issue, specifically whether Malone struck the Plaintiff on the
back of his head or between his shoulder blades and whether the
Plaintiff was resisting arrest at the time Malone delivered the
two strikes.

On July 20, 2009, over three months after the incident,
Plaintiff's counsel wrote a letter to the Township of Willingboro
advising of his representation of the Plaintiff.  Specifically,
this letter states:

> Dear City Clerk:
>
> Please be advised that I represent Mr. Booker in
> reference to injuries and Civil Rights violations he
> suffered as a result of his encounter with officers of
> the Willingboro Police force on April 2, 2009. This
> letter is written to provide formal notice to the City of
> Willingboro of a tort claim arising from the conduct of
> police officers towards Mr. Booker. This notice is
> provided pursuant to N.J.S.A. 59:8-8
>
> If this notice should be provided to any other
> representative of the City of Willingboro, kindly advise
> as soon as possible.

(Pl.'s Ex. E; Def.'s Ex. A to the Certification of Carmela A.
Spych.)

On July 21, 2009, the Secretary to the Township Manager for
the Township of Willingboro, Carmela A. Spych, wrote to
Plaintiff's counsel and forwarded him a copy of the tort claim
notice adopted by the Township pursuant to N.J.S.A. 59:8-6.  The
letter advised Plaintiff's counsel that his claim would be

evaluated as soon as the form was completed and returned with the information requested.  The letter also advised Plaintiff's counsel of the applicable limitations period for tort claims against public employees and the Township. (Def.'s Ex. B to the Certification of Carmela A. Spych.)  Plaintiff's counsel never responded to the July 21, 2009 correspondence and neither Plaintiff nor Plaintiff's counsel ever filed a completed tort claim notice on the form adopted by the Township.  (Certification of Carmela A. Spych at ¶ 5.)  In addition, no notice of claim was ever submitted which identified Officer Malone as a prospective defendant, or a person against whom a claim would be brought. (Certification of Carmela A. Spych at ¶ 7.)

The Plaintiff then filed the instant action on September 22, 2010 against the Township of Willingboro and Officer Malone. [Docket Item 1.]  The Plaintiff brought four causes of action in his complaint.  First, the Plaintiff alleged that Defendant Township of Willingboro had an unconstitutional custom, policy or practice which encouraged police officers to engage in conduct involving excessive force in violation of 42 U.S.C. § 1983 and specifically alleged that the Township failed to properly train and discipline police officers with regard to the use of excessive force.  In Count II, the Plaintiff alleged that Officer Malone utilized excessive force in violation of his Fourth and Fourteenth Amendment Rights under the Constitution in violation

10

of 42 U.S.C. § 1983.  In Counts III and IV, the Plaintiff alleged that Officer Malone committed the common law torts of assault and battery and malicious prosecution respectively.

**B. The Instant Motion**

The Defendants move for summary judgment.  First, the Defendants argue that Plaintiff's Monell claim brought against the Township in Count I and any claim for punitive damages against the Township must be dismissed because there is no evidence to support Plaintiff's claim that an unconstitutional custom, policy or practice caused his injuries.  Next, the Defendants argue that the tort claims against Officer Malone must be dismissed because the Plaintiff failed to comply with the notice requirements of the New Jersey Tort Claims Act and the Plaintiff cannot pierce the medical threshold of N.J.S.A. 59:9-2(d).  Finally, the Defendants argue that summary judgment is appropriate as to the excessive force claim against Officer Malone because Officer Malone's use of force was objectively reasonable under the circumstances.

The Plaintiff filed opposition.  At the outset of his brief, the Plaintiff indicates that he does not oppose the dismissal of Count I as well as the dismissal of Plaintiff's claims for punitive damages against the Township.  However, the Plaintiff argues that summary judgment should be denied as to Counts II, III and IV.  First, the Plaintiff maintains that the July 20,

2009 letter sent to the Township Clerk substantially complied with the notice requirements of the New Jersey Tort Claims Act. Next, the Plaintiff argues that he is not required to meet the medical threshold of N.J.S.A. 59:9-2(d) because a jury could find that Officer Malone engaged in willful misconduct or acted with actual malice and therefore qualifies for an exception to the medical threshold requirement. Finally, the Plaintiff contends that genuine issues of material fact exist which prevent summary judgment as to the Plaintiff's excessive force claim.

## III. DISCUSSION

### A. Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law. Id. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. Id. The Court will view any evidence in favor of the nonmoving party and extend any reasonable favorable inferences to be drawn from that evidence to that party. Hunt v. Cromartie, 526 U.S. 541, 552 (1999). See also Scott v. Harris,

12

550 U.S. 372, 378 (2007) (The district court must "view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion.").

**B. Analysis**

As an initial matter, the court will grant summary judgment as to Count I of Plaintiff's complaint and all claims against Defendant Township of Willingboro will be dismissed with prejudice.  The Plaintiff has not adduced any evidence of an unlawful policy or custom to support his § 1983 claim against the Township and has not opposed summary judgment as to this count. Therefore, Count I will be dismissed.

The court will address the remaining counts below.

**1. Tort Claims**

In Counts III and IV, the Plaintiff alleges that Officer Malone committed the common law torts of assault and battery and malicious prosecution against the Plaintiff.  In order to bring a tort claim against a public employee, a plaintiff must satisfy the notice requirements of the New Jersey Tort Claims Act.

Tort claims against public entities and public employees are governed by the New Jersey Tort Claims Act ("NJTCA"), N.J.S.A. 59:1-1 et seq.  See Velez v. City of Jersey City, 180 N.J. 284 (2004); Longo v. Santoro, 195 N.J. Super. 507, 514 (App. Div. 1984); Badalamente v. Monmouth County Prosecutor's Office, No. 08-2501, 2011 U.S. Dist. LEXIS 53457, *25 (D.N.J. May 17, 2011).

The NJTCA requires that a notice of claim must be filed with the public entity not later than the ninetieth (90th) day after accrual of the underlying cause of action.  N.J. Stat. Ann. § 59:8-8(a).  Failure to file the required notice will result in the dismissal of the Plaintiff's tort claims. N.J. Stat. Ann. § 59:8-3 ("No action shall be brought against a public entity or public employee under this act unless the claim upon which it is based shall have been presented in accordance with the procedure set forth in this chapter.").

The New Jersey Tort Claims Act requires the following information to be presented in a notice of claim:

A claim shall be presented by the claimant or by a person acting on his behalf and shall include:

a. The name and post office address of the claimant;

b. The post-office address to which the person presenting the claim desires notices to be sent;

c. The date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted;

d. A general description of the injury, damage or loss incurred so far as it may be known at the time of presentation of the claim;

e. The name or names of the public entity, employee or employees causing the injury, damage or loss, if known; and

f. The amount claimed as of the date of presentation of the claim, including the estimated amount of any prospective injury, damage, or loss, insofar as it may be known at the time of the presentation of the claim, together with the basis of computation of the amount claimed.

14

N.J.S.A. 59:8-4.  Further, the NJTCA permits a municipality to adopt its own tort claim form, N.J.S.A. 59:8-6, as Willingboro has done, and which Willingboro furnished to Plaintiff's counsel. Willingboro's letter even advised counsel of the procedure for seeking leave from the Superior Court to enlarge the 90-day period for submitting his requested tort claim.

It is undisputed that Officer Malone is a public employee and therefore the Plaintiff was required to comply with the notice requirements of the NJTCA.  It is also undisputed that the Plaintiff did not file a formal notice of claim with the Township.  The Plaintiff argues that his letter to the Township Clerk of July 20, 2009 substantially complies with the notice provisions of the NJTCA and therefore, his claim should not be dismissed.  The court finds this argument unpersuasive.

New Jersey courts have long recognized that substantial compliance with N.J.S.A. 59:8-4 is sufficient to satisfy the NJTCA's notice requirement. Lameiro v. West New York Bd. of Educ., 136 N.J. Super. 585, 587 (Law Div. 1975); Dambro v. Union County Park Comm'n, 130 N.J. Super. 450 (Law Div. 1974). "Substantial compliance" means that "all of the required information has been given to those to whom the notice should be given and that it has been given in a form which should alert the recipient to the fact that a claim is being asserted" against the public entity.  Lameiro, 136 N.J. Super. at 587.  Moreover,

15

substantial compliance means that "notice has been given in such a way, which though technically defective, substantially satisfies the purpose for which notices of claims are required." Id.

The purpose of the claims notification requirement is two-fold: (1) to allow the public entity at least six months for administrative review with the opportunity to settle meritorious claims prior to the bringing of suit; and (2) to provide the public entity with prompt notification of the claim in order to adequately investigate the facts and prepare a defense. See Newberry v. Township of Pemberton, 319 N.J. Super. 671 (App. Div. 1999); Reale v. Wayne Township, 132 N.J. Super. 100, 111-12 (Law Div. 1975); see also Beauchamp v. Amedio, 164 N.J. 111 (2000).

In this case, Plaintiff's counsel's letter of July 20, 2009 fails to substantially comply with the NJTCA. First, the letter does not provide the information required by N.J.S.A. 59:8-4. In particular, the July 20, 2009 letter does not provide: (1) the address of the claimant; (2) the place and other circumstances of the occurrence or transaction which gave rise to the claim asserted; (3) a general description of the injury, damage or loss incurred so far as it was known at the time of presentation of the claim; (4) the name of the public employee causing the injury, damage or loss; or (5) the amount claimed as of the date of presentation of the claim, including the estimated amount of

16

any prospective injury, damage, or loss.

The July 20, 2009 letter fails to provide important
information which would allow enable the Township to attempt to
settle the Plaintiff's claim or in the alternative, prepare its
defense.  Without this key information, the July 20, 2009 letter
did not serve the purpose for which a notice of claim is required
and therefore cannot be considered as substantially complying
with N.J.S.A. 59:8-4.

In addition, this information was known to the Plaintiff at
the time the letter was issued.  This is evidenced by Plaintiff's
written statement on April 3, 2009, which was never submitted to
the Township.  In this written statement, allegedly written the
day after the incident, the Plaintiff provides his own name and
address, the name and badge number of Officer Malone and a
detailed description of the incident and his subsequent injuries
to his face and right lip.  Therefore, it is undisputed that the
Plaintiff had this information available to him at the time his
attorney filed the July 20, 2009 letter with the Township Clerk.

Further, in regards to the Plaintiff's assault and battery
claim, the July 20, 2009 letter was also filed outside the ninety
day limitations period required under the NJTCA.  The incident
occurred on April 2, 2009 and therefore, to be considered timely,
notice must have been filed with the Township no later than July
2, 2009.  This letter was filed more than two weeks past the

17

ninety day deadline.  The NJTCA is clear that:

> The claimant shall be forever barred from recovering against a public entity or public employee if:
>
> a. He failed to file his claim with the public entity within 90 days of accrual of his claim except as otherwise provided in section 59:8-9.

N.J.S.A. 59:8-8.

In this case, it is undisputed that the July 20, 2009 letter was filed outside the ninety day limitations period and that the plaintiff did not seek leave from the New Jersey Superior Court to file a late notice pursuant to N.J.S.A. 59:8-9 in order to pursue his assault and battery tort claim.  Consequently, in addition to being substantively deficient, this letter was also untimely filed as to Plaintiff's assault and battery tort claim and cannot be considered as substantially complying with the notice requirements of the NJTCA.

Though not briefed by the parties, the court finds it important to note that the July 20, 2009 letter was not untimely as to the Plaintiff's malicious prosecution claim.  After the Plaintiff was apprehended on April 2, 2009, he was charged with resisting arrest and eluding an officer.  Both of these charges against the Plaintiff were dismissed on June 10, 2009. Consequently, the Plaintiff's malicious prosecution claim did not accrue until June 10, 2009.  See Shontz v. Cumberland County, No. A-2711-06T2, 2008 N.J. Super. Unpubl. LEXIS 2502 at *10 (holding that without a favorable termination of the criminal proceeding,

18

a requisite element of plaintiff's malicious prosecution claim
was not present and therefore the event triggering the 90-day
notice requirement under the New Jersey Tort Claims Act was the
plaintiff's acquittal)(citing Muller Fuel Oil Co. v. Ins. Co. of
N. Am., 95 N.J. Super. 564, 577 (App. Div. 1967)).  Therefore,
the July 20, 2009 letter was timely as to the Plaintiff's
malicious prosecution claim as it was filed within the 90-day
notice period.

However, this does not change the court's conclusion that
the July 20, 2009 letter was substantively defective and
therefore cannot be considered as substantially complying with
N.J.S.A. 59:8-4.  This is especially true with regard to the
Plaintiff's malicious prosecution claim as the July 20, 2009
letter gives no indication that criminal charges were filed,
these charges were allegedly frivolous and the charges were
ultimately dismissed in the Plaintiff's favor.  All of this
information was available to the Plaintiff at the time the July
20, 2009 letter was sent and was not included therein.  As a
result, this letter fails to inform the Township of the
Plaintiff's potential malicious prosecution claim and prevented
the Township from attempting to settle this claim or prepare its
defense.

Therefore, both of Plaintiff's common law tort claims must
be dismissed for failure to substantially comply with the

19

substantive notice requirements of the NJTCA.  Further, the court
also holds that Plaintiff's assault and battery claim must be
dismissed for the untimeliness of the July 20, 2009 letter.[2]

### 2. Excessive Force Claim

The Plaintiff's remaining claim in Count II is brought
pursuant to 42 U.S.C. § 1983 and alleges that Officer Malone used
excessive force in effecting the arrest of the Plaintiff in
violation of the Plaintiff's rights under the Fourth and
Fourteenth Amendments.

The Fourth Amendment's objective reasonableness standard
controls where a police officer allegedly uses excessive force
during an arrest.  See Graham v. Connor, 490 U.S. 386, 397
(1989).  To establish a claim for excessive force as an
unreasonable seizure, a plaintiff must show that: (a) a seizure
occurred; and (b) that seizure was unreasonable.  See Rivas v.
City of Passaic, 365 F.3d 188, 198 (3d Cir. 2004) (citing Curley
v. Klem, 298 F.3d 271, 279 (3d Cir. 2002)).

Proper application of this objective reasonableness standard
"requires careful attention to the facts and circumstances of
each particular case, including the severity of the crime at
issue, whether the suspect poses an immediate threat to the

---

[2] As the court has granted summary judgment as to these
claims pursuant to the notice requirement, it is unnecessary for
the court to reach the issue of whether the Plaintiff was
required to meet the medical threshold of N.J.S.A. 59:9-2(d).

safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." See Saucier v. Katz, 533 U.S. 194, 205 (2001).  Other factors a court may consider include the duration of the action, whether the action takes place in the context of effecting an arrest and the possibility that the suspect may be armed.  Rivas, 365 F.3d at 198.

The Third Circuit has emphasized that a court must evaluate an excessive force claim "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  Rivas, 365 F.3d at 198 (citing Graham, 490 U.S. at 395).  This is because "police officers are often forced to make split-second judgments - in circumstances that are often tense, uncertain and rapidly evolving - about the amount of force that is necessary in a particular situation."  Id. (citing Graham, 490 U.S. at 395).  Ultimately, "the question is whether the officers' actions [were] 'objectively reasonable' in light of the facts and circumstances confronting them."  Graham, 490 U.S. at 397.

In this case, giving all reasonable favorable inferences to the non-moving party as the court is required to do on summary judgment, there is a genuine issue of material fact as to whether Officer Malone used excessive force in effecting his arrest of the Plaintiff.  The court notes that the arrest took place after a high speed chase in a residential area; it was unknown whether

21

the Plaintiff was armed or dangerous; the duration of the
encounter was short as it lasted 74 seconds in its entirety and
Officer Malone effected his arrest of the Plaintiff in only 24
seconds; Officer Malone did not use other more extreme force in
arresting the Plaintiff such as his canine partner, baton or gun;
that the situation was uncertain and rapidly evolving given the
flight of the driver and nature of the high speed chase; that
Officer Malone was alone on the scene when the Plaintiff was
apprehended; that Officer Malone was unable to handcuff the
Plaintiff since he needed to use one hand to maintain control of
his canine partner; and that there was potential for great risk
to others as this encounter took place in the middle of a
residential neighborhood.

However, the Plaintiff's claim for excessive force against
Officer Malone, according to the Plaintiff's brief, is limited to
the two strikes Officer Malone delivered to the back of the
Plaintiff after the Plaintiff was pinned to the ground. (Pl.'s
Br. in Opp. at 9)("It is the plaintiff's position that defendant,
Sean Malone, used excessive or unreasonable force when he struck
the plaintiff while plaintiff was lying on the ground.") The
Plaintiff maintains that he was not resisting arrest and that he
was complying with Officer Malone's orders.  The Plaintiff also
testified that Officer Malone struck the back of his head, not
his shoulder blades, and that he sustained injuries to the inside

of his mouth when the blows pressed his face onto the concrete. Giving all reasonable favorable inferences to the Plaintiff, a rational jury could conclude that the Plaintiff was not resisting arrest and that Officer Malone had sufficient control of the situation at that point in time which would render the two strikes to the back of Plaintiff's head unnecessary and excessive, as well as dangerous.

As there is a genuine issue of material fact on whether Plaintiff was resisting arrest at the time the strikes were given and whether Office Malone struck the back of Plaintiff's head or Plaintiff's back between his shoulder blades, summary judgment is inappropriate.

Therefore, the Defendants' motion as to the Plaintiff's excessive force claim under § 1983 against Officer Malone will be denied.

Though not addressed by the Defendants in their moving brief,[3] the court also finds it expeditious to address whether summary judgment is appropriate to dismiss Plaintiff's claim for

_____

[3] The Defendants, in their reply brief, state that "Plaintiff does not offer any opposition to the components of the pending Motion which seek to dismiss the claims . . . for punitive damages against the individual Officer." (Defs. Br. at 1.) However, after reviewing the Defendants' moving brief, the court finds that the Defendants did not present any briefing or argument addressing the issue of punitive damages against Officer Malone. Since the court finds the issue of punitive damages also presents a jury question, the court will not delay disposition of the issue despite the moving parties' failure to properly brief this aspect of the Plaintiff's claim.

punitive damages against Officer Malone.  Under section 1983, while a defendant who is merely negligent or grossly negligent may not be subjected to punitive damages, a defendant whose conduct demonstrates a reckless disregard toward others' rights may be subjected to punitive damages.  See Smith v. Wade, 461 U.S. 30, 56 (1983) (a jury may award punitive damages when a "defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others"); Savarese v. Agriss, 883 F.2d 1194, 1204 (3d Cir. 1989)(holding that a defendant's conduct must be at minimum reckless or callous to impose punitive damages under § 1983.).

In this case, the court finds that the issue of whether Officer Malone acted recklessly indifferent to Plaintiff's rights presents a jury question.  See Kounelis v. Sherrer, 529 F. Supp. 2d 503, 534 (D.N.J. 2008).  A rational jury could find that the Plaintiff was not resisting arrest when Officer Malone allegedly struck the back of his head causing his face to be forcibly pressed into the concrete.  Such an action by a police officer, when not in response to resistance or noncompliance, could be found to be callously indifferent to the Plaintiff's Fourth Amendment rights to be free from excessive force.

Therefore, summary judgment is inappropriate to dismiss Plaintiff's claim for punitive damages against Officer Malone.

24

## IV.  CONCLUSION

For the reasons discussed herein, the court will grant in part and deny in part Defendants' motion for summary judgment. The court will dismiss all claims against Defendant Township of Willingboro as the Plaintiff has not set forth sufficient evidence to support his § 1983 against the Township and consents to the dismissal of this claim.  The court will grant summary judgment as to Plaintiff's common law tort claims as the court finds the Plaintiff has failed to satisfy the notice requirements of the New Jersey Tort Claims Act, N.J.S.A. 59:8-1, et seq. However, the court will not dismiss the Plaintiff's excessive force claim against Defendant Malone or Plaintiff's claim for punitive damages against Defendant Malone as the court finds there are a genuine issues of material fact which preclude summary judgment.

The accompanying Order will be entered, and the case will be scheduled for trial upon the sole remaining claim.


**June 22, 2012**                          **s/ Jerome B. Simandle**
Date                                        JEROME B. SIMANDLE
                                            Chief U.S. District Judge


25